IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERESA DAVIS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No. 14-5981 |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY HOSPITAL, INC., | : | |
| Defendant. | : | |

MCHUGH, J.                                                                                              NOVEMBER 16, 2015

**MEMORANDUM**

I.   Introduction

The Family Medical Leave Act and Americans with Disabilities Act provide important protections for workers, as evidenced by the thirteen leaves-of-absence Plaintiff Theresa Davis was afforded during her eight years of employment at Defendant Temple University.  But the safe harbor provided by those statutes does not prevent an employer from discharging an employee, even while on leave, if there is a legitimate basis for doing so.  The issue before me is whether Temple violated Plaintiff's rights by firing her when she was on leave.  Upon review of the record, Temple has brought forth substantial, uncontroverted evidence that Plaintiff was terminated for reasons of performance and conduct.  Plaintiff lacks evidence of pretext or evidence that might suggest an unlawful purpose.  Accordingly, Defendant Temple's Motion for Summary Judgment will be granted.

II.   Summary of the Facts

Plaintiff, Theresa Davis, joined Temple University in 2004 as a supervisor in outpatient registration.  Dep. Davis at 15:22–17:14.  Plaintiff supervised an office responsible for registering patients for various outpatient services, verifying insurance, and providing patients

1

with paperwork required for tests and services. *Id.* at 17:17–22. Defendant terminated Plaintiff's employment in 2013. Plaintiff claims Defendant terminated her job and took other actions against her because she suffered from certain medial conditions and required periodic leave and other accommodations. Defendant insists that it had legitimate justifications for the actions it took.

Plaintiff suffers from several medical conditions. In her deposition, she explained that she suffered from breast cancer, migraines, severe depression, stress, and anxiety while at Temple. *Id.* at 28:21–29:2. Plaintiff attributes at least some of her depression, stress, and anxiety to concerns that her job was not secure, and to lack of support from her management team. *Id.* at 80:6–81:24.

For health reasons, Plaintiff periodically took medical leave from her job. Temple's record of Plaintiff's leaves show that from 2005 to 2013, Plaintiff requested and received leave seventeen times. Def. Ex. X. Thirteen of these leaves-of-absence were taken pursuant to Plaintiff's rights under the Family and Medical Leave Act (FMLA). *Id.* All of Plaintiff's requests for leave were granted, and an eighteenth request was denied for lack of a medical certification. *Id.* On one occasion Plaintiff was so "distraught and depressed" that she was confined to a mental institution for about two days. *Id.* at 34:1–5.

Although Defendant granted each request, according to Plaintiff certain management staff made her feel these requests were unwelcome. Def. Memo Supporting Summ. J. at 10 (citing to Davis Dep.). On one occasion, Sandy Correa, one of Plaintiff's supervisors, filled in for her while she was on leave. Davis Dep. 89:2–3. Upon Plaintiff's return, Correa "would complain that the reports were so long. And how did I allow them to get backed up like that …" *Id.* at 89:20–22. Correa also responded to Plaintiff's requests for leave with comments such as

"You're taking time off again?" *Id.* at 90:8–20. Plaintiff perceived comments such as these as hostility to her requests for FMLA leave. On other occasions, Plaintiff's supervisors contacted her while she was out on FMLA leave. *Id.* at 33:3–24. Plaintiff felt harassed by these contacts. *Id.*

Defendant contends that actions it took against Plaintiff, including her termination, were consequences of a chain of incidents that began in August 2013 and were unrelated to her medical conditions. Around August 6, 2013, a patient came into Plaintiff's department to prepare documents for a test. Def. Ex. JJ at 3. One of Plaintiff's supervisees attempted to prepare the documents, but there was some confusion about the insurance requirements for the test. Dep. Davis 95:22–100:19. The patient and his wife were so unhappy with the service they received that they filed a complaint which reached all the way to the top echelons of the Temple University Health System. Dep. Davis at 101:6; Def. Ex. JJ.

It is undisputed that Plaintiff never interacted with the patient or his wife. Plaintiff recalls that just after the patient complaint, Sandy Correa told Plaintiff that she and her supervisee had followed correct protocol. *Id.* at 101:18–24. But then a day or two after the patient complaint, Plaintiff met with Ms. Correa and Lisa Daly, another of Plaintiff's supervisors, in Daly's office. Dep. Davis at 107:9–109:10. Daly informed Plaintiff that "Dr. Forfia is really upset. Dr. Forfia contacted the CEO and this has really gone up the chain." *Id.* at 108:12–18. Daly told Plaintiff that Plaintiff and her supervisee were to be disciplined for the incident for failing to "escalate the problem to Sandy [Correa] and myself." *Id.* 109:20–110:4.

The criticism and threat of discipline upset Plaintiff. Ms. Correa recalled that Ms. Davis "got upset, stood up and made a comment that she didn't know if this was for her, the position, and wanted to go home, requested to leave a half day or 30 minutes early, sick and wasn't

coming in the next day." Dep. Correa at 24:1–7.  Ms. Davis concedes that when Temple informed her of the suspension, the tone of the meeting "may have been elevated." Dep. Davis at 125:4.

The next day, August 9, Plaintiff met with Brenna Woods, Employee Relations Manager, and Lisa Daly. *Id.* at 125:5–16. At that meeting, Defendant suspended Plaintiff from work. Def. Ex. OO.

Thereafter, on August 22, 2013, Temple management staff met with Plaintiff to inform her they were placing her on a "Performance Improvement Plan" and transferring her to a new department that Temple had created for her. Dep. Davis at 142:22–143:15. She was told to report to the new position the following day, but Plaintiff was on vacation for the rest of the week, so Defendant's staff told her to report on the following Monday. Dep. Davis at 144:6–12. Plaintiff requested FMLA leave for the following week. Def. Ex. CC.

During this time period, Plaintiff or Plaintiff's physician *may* have sent a letter to Defendant in which Plaintiff's physician requested "a move to a different department, under a different reporting structure" because "Mrs. Davis has experienced an acute and severe stress reaction as a result of increased occupational stress." Def. Ex. SS. The letter is dated August 23, 2013 and addressed "To Whom It May Concern." *Id.* Defendant argues there is no evidence that the letter was ever sent to Temple or that anyone at Temple ever saw the letter. Def. Memo in Support of Mot. for Summ. J. at 20.

Over the weekend of August 24 and 25, 2013, Plaintiff came into her former office to clear it out. Dep. Davis 193:13–18. She removed a cot from her office. *Id.* at 179:19–180:1. Defendant's "Environment of Care Officer," Kathryn Leach, who did not know Plaintiff or her history of medical leave, identified the cot as Temple property when she reviewed a video of

4

Plaintiff leaving the building.  Dep. Leach at 14:16–18.  On September 9, Monica Marchetti-Brock, a Temple HR manager, and Brenna Woods, an Employee Relation Manager, called Plaintiff and asked about the cot.  Def. Ex. FF; Dep. Woods at 19:22–20:24.  For purposes of this litigation, Plaintiff insists that the cot was not Temple's property, but she acknowledges that when Brock and Woods called her, she did not at that point share her own beliefs as to who was its rightful owner.  Dep. Davis at 181:6–13.  Brock and Woods then informed Davis that she was terminated for theft of the cot and misrepresentation that she had taken it.  Def. Ex. HH.  Of particular significance for purposes of this Motion, Ms. Davis admitted in deposition that she failed to tell anyone at Temple that the cot was not Temple's property until she had her unemployment hearing.  Dep. Davis at 182:18–23.

Plaintiff filed this lawsuit in October, 2014.  The suit claims Defendant interfered with Plaintiff's rights under the FMLA and retaliated against her for exercising those rights.  The suit also alleges Defendant violated the Americans with Disabilities Act  (ADA) and the Pennsylvania Human Relations Act (PHRA) by discriminating against Plaintiff because of a disability, and retaliating against her for engaging in conduct protected by those laws.  Defendant has moved for summary judgment.

   III.	Controlling Standard

Federal Rule of Civil Procedure 56(a) states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Plaintiff has the burden of proof at trial, and so "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden … by showing that the nonmoving party's evidence is insufficient to carry that burden.' " *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Wetzel v. Tucker*, 139 F.3d

380, 383 n.2 (3d Cir. 1998)).  To show that the nonmoving party's evidence is insufficient to meet its burden at trial, Defendant must show there is not enough evidence supporting each element of Plaintiff's claims "to enable a jury reasonably to find for the nonmoving party on that issue under the governing substantive law."  *Weightman v. Bank of New York Mellon Corp.*, 772 F. Supp. 2d 693, 701 (W.D. Pa. 2011) ("If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The court should "view the record in the light most favorable to [the non-moving party] and resolve all reasonable inferences" in the non-moving party's favor.  *Jones v. School Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 n.3 (3d Cir. 1998) (*en banc*)).  However, "a party opposing summary judgment 'must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine issue.' "  *Weightman*, 772 F.Supp.2d at 701 (citing *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).  "[T]he mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue."  *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1308 (3d Cir. 1995).

    IV.    Discussion

        a. FMLA Interference

Plaintiff alleges that Defendant illegally interfered with the exercise of her FMLA rights.  The FMLA "grants an 'eligible employee' the right to 12 work-weeks of leave over any 12-month period because of, among other things, 'a serious health condition that makes the

employee unable to perform the functions' of the employee's position." *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006) (citing 29 U.S.C. § 2612(a)(1). The FMLA also guarantees that employees who take FMLA leave may be reinstated to their "former position or an equivalent one … ." *Id.* (citing 29 U.S.C. § 2614(a)(1)).

The Act forbids employers from interfering with an employee's exercise of her FMLA rights to leave or reinstatement. *Id.* (citing 29 U.S.C. § 2615(a)(1)). The Act provides employees with a private right of action to enforce their rights and recover damages from violations. 29 U.S.C. § 2617(a).

To win a claim of FMLA interference,

> a plaintiff must show that: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Mascioli v. Arby's Restaurant Group, Inc.*, 610 F. Supp. 2d 419, 429 (W.D. Pa. 2009).

Plaintiff asserts, "In the case at bar, an interference violation clearly occurred when Defendant failed to reinstate Plaintiff following her August 13 FMLA leave. Instead, Plaintiff was terminated during that leave." Pl. Resp. in Opp'n to Mot. Summ. J. at 50. Plaintiff's argument seems to be that because Plaintiff was on leave, she had an absolute right to reinstatement regardless of intervening events.

This mischaracterizes the FMLA's guarantee of reinstatement for workers. The FMLA does not "entitle any restored employee to … any right, benefit, or position of employment *other* than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3) (emphasis added). "[T]he FMLA does not provide employees with a right against termination for a reason other than interference with

rights under the FMLA." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007). Stated differently, [t]he FMLA simply does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave." *Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 977–78 (8th Cir. 2005)  If Defendant could have legitimately terminated Plaintiff had she not been on FMLA leave, then it could have terminated her while on leave. *Sarnowski*, 510 F.3d at 403 (holding plaintiff "will not prevail on his interference claim if [defendant] can establish that it terminated [plaintiff] for a reason unrelated to his intention to exercise his rights under the FMLA.").

Plaintiff has not produced sufficient evidence to permit a reasonable jury to conclude that Temple terminated her for any reason related to her FMLA leave. Depositions and notes in record provide uncontroverted evidentiary support for Temple's position that its staff discovered video of Plaintiff leaving her office with a cot. A staff member with no knowledge of Plaintiff or her FMLA leave identified the cot as Temple property. Plaintiff then denied any knowledge whatsoever of a Temple-owned cot when management staff contacted her to investigate. Dep. Marchetti-Brock at 12:24–13:9 (Marchetti-Brock explaining she reviewed footage of Davis clearing her office); Dep. Leach at 12:17–13:9 (Leach explaining she did not know who Davis was or that she was suspected of stealing a cot before reviewing footage); Dep. Leach at 14:4–15:24 (Leach identified the cot herself with no prompting from Marchett-Brock, and she was certain the cot Davis removed from her office was a Temple-owned cot); Dep. Davis at 178:4–182:13 (Plaintiff denied stealing a cot when management called to ask her about it). Given that sequence of events, Plaintiff has produced no evidence linking her termination to her leave.

Plaintiff argues that the charges of theft and misrepresentation are pretextual, and supports this argument by asserting the cot was not actually Temple's property. Plaintiff

8

explains, "if a plaintiff can demonstrate the *reason* for the adverse action was *false* … then there is a question of fact as to whether or not discrimination was more likely the real reason." Pl. Resp. in Opp. to Mot. Summ. J. at 32.  In many cases, successfully challenging the factual basis for a charge of misconduct would suffice to prove pretext.  On the particular facts here, it does not.  The actual ownership of the cot is irrelevant because when Plaintiff was terminated, Temple had no reason to question whether the cot was its property.  There is simply no evidence that Defendant's employees considered Plaintiff's FMLA leave or medical conditions when they discovered Plaintiff had taken a cot from her office.  There is no evidence Kathryn Leach was even aware of Plaintiff's FMLA leave or medical conditions.  Furthermore, Plaintiff herself acknowledges that she did not initially raise her defense that the cot was not Temple property, Dep. Davis 181:6–182:5.[1]  In fact, her unemployment compensation hearing was admittedly the first time she told any of Defendant's management her contention that the cot did not belong to the hospital.  Dep. Davis 182:18–20.  *See also*, Dep. Daly 36:21–37:15 (Daly did not hear that the cot might not be Defendant's property until well after Plaintiff's termination).  The true ownership of the cot would be material only if Davis raised it at the time of her termination, thereby calling into question the basis for Temple's action.[2]  On the record as it stands, Temple

---

[1] I also note that Plaintiff equivocates about the ownership of the cot.  Although Plaintiff maintains in her pleadings that the cot belonged to Savoria Price, in deposition, Plaintiff said, "[I]f, in fact, it wasn't a cot that Savoria purchased, which I'm under the impression that it was, but if it wasn't and she knew that it wasn't, why would she accept the cot if it didn't belong to her? … I had no reason to believe it wasn't [Savoria's cot].  She accepted it.  She never said, 'Davis, this is not my cot.'  She accepted the cot.  The cot never even came in my house." Dep. Davis at 189:15–190:10.  Savoria Price, for her part, testified that she cannot recall whether or not she brought a cot to work or gave Plaintiff a cot to store.  Dep. Price at 11:16–21.

[2] I emphasize that Defendant's intent to discriminate is not at issue.  The FMLA prohibits *any* interference, not just intentional discrimination.  "In proving that [the defendant] interfered with her rights, [the plaintiff] does not need to prove that [the defendant] acted with discriminatory intent." *Lichtenstein v. Univ. of Pittsburgh Med. Center*, 691 F.3d 294, 312 (3d Cir. 2012).  Rather, the key question is whether the termination was related to the request for FMLA leave.  But if Leach, who made the determination that the cot was Temple property was not aware of Plaintiff's FMLA leave (and no one else led Leach to making that determination), her determination could not be related to that leave as a matter of simple logic.

had reason to believe its property had been stolen, such that Ms. Davis would have been subject to termination despite her FMLA status. *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.").

Plaintiff's evidence of FMLA interference is insufficient to permit a jury to reasonably find for the Plaintiff on each element of that claim. Plaintiff's FMLA claim will be dismissed.

    b. FMLA, ADA, and PHRA Retaliation

Plaintiff's retaliation claims under the FMLA, the ADA, and the PHRA all proceed under the much litigated *McDonnell Douglass* burden-shifting framework. *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973); *Potenza v. City of New York*, 365 F.3d 165, 165–68 (2d Cir. 2004)[3] (applying burden-shifting to FMLA retaliation claim); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (applying *McDonnell Douglass* framework to an ADA retaliation claim); *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) ("[t]he PHRA and the ADA are basically the same") (internal citations omitted). *See also Urey v. Grove City College*, 94 Fed. App'x 79, 81 (3d Cir. 2004) ("[A]lthough Ms. Urey's claims of retaliation are brought under various sources, the analytical framework for each is identical."). As Plaintiff aptly puts it, "Plaintiff's ADA and FMLA retaliation claims are inextricably intertwined." Pl. Opp. to Mot. for Summ. J. at 36. Plaintiff discusses both together, and I will do the same.

Plaintiff's first step is to establish her *prima facie* case. To succeed on the FMLA claims, Plaintiff must show "(1) she invoked her right to leave; (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Hansler v.*

---

[3] The Third Circuit has cited *Potenza* favorably in the precedential *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 n.11 (3d Cir. 2012) and the non-precedential *Adams v. Fayette Home Care and Hospice*, 452 Fed. App'x 137, 139 (3d Cir. 2011).

10

*Lehigh Valley Hosp. Network*, 798 F.3d 149, 158–59 (3d Cir. 2015).  Similarly, to prevail on her ADA and PHRA claims, she must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  The burden of production to establish a *prima facie* case is slight.  *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir. 1983).  Plaintiff has successfully identified several protected activities under the FMLA, ADA, and PHRA.  There is also no doubt that Plaintiff's suspension and termination constitute adverse employment actions, and they occurred during her leave.

Consequently, "the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse action."  *VanStory-Frazer v. CHHS Hosp. Co., LLC*, 827 F. Supp. 2d 461, 473–74 (E.D. Pa. 2011); *Krouse*, 126 F.3d at 500.  If the employer does so, the burden then shifts back to the affected employee to discredit those reasons as pretext.  *Lichtenstein v. Univ. of Pittsburgh Med. Center*, 691 F.3d 294, 302 (3d Cir. 2012).  In addition to establishing pretext, the plaintiff must also still prove causation, and on the facts here, the two are interrelated.

Ms. Davis argues she can satisfy causation and pretext under three theories: temporal proximity; antagonism; and the evidence as a whole.  Temporal proximity can connect protected action to adverse actions in a causal chain and undermine a defendant's justifications for an adverse action.  *Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) ("We have held that when only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn.").  Plaintiff argues her termination followed close on the heels of four protected activities:

> Plaintiff was terminated: (i) **_one month_** after she complained to Defendant's HR Department that she was being subjected to retaliation by Daly; (ii) **_18 days_** after [she] referenced she retained an attorney; (iii) **_17 days_** after her physician requested a position change … and (iv) **_10 days_** after her physician submitted related FMLA/medical documentation … .

Plaintiff's Opp. to Mot. for Summ. J. at 43.

Although temporal proximity often supports an inference of causation, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). Furthermore, even if the proximity permits an inference of causation that can complete the *prima facie* case, it does not on these facts cast doubt upon the non-retaliatory basis for termination proffered here by Temple. In this case the inference breaks down because of an intervening event: Temple concluded (perhaps erroneously) that Plaintiff stole a piece of its property. An extensive record of depositions, documents, and emails provides no factual support for the position that it was the earlier protected activities rather than the purported theft that led to Ms. Davis' termination.

Antagonism from employers following protected conduct can also support a claim. *See Kachmar*, 109 F.3d at 177. Plaintiff asserts that she was subject to antagonism when she was suspended, transferred to a new department, and eventually terminated. Pl. Opp. to Mot. for Summ. J. at 44. Plaintiff cites *Urey v. Grove City College*, a non-precedential decision, in which the Third Circuit considered whether a plaintiff had alleged a pattern of antagonism following protected conduct. 94 Fed. App'x 79, 81–82 (3d Cir. 2004). The court found the evidence insufficient, because, as in this case, the basis for the employer's conduct was not discriminatory:

12

> [T]he record shows the conduct of which Ms. Urey now complains was taken in response to her own facts of insubordination, including her failure to adhere to the College's dress code and demonstrate respect for her supervisors.

*Id.* Specifically, the court held "the conduct 'did not portend any future retaliation,' but instead amounted to 'discrete responses to particular occurrences.' " *Id.* (citing *Weston v. Pennsylvania*, 251 F.3d 420, 432 (3d Cir. 2001) (overruled in part by *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Similarly, the record in this case shows that the challenged actions—suspension, transfer, and termination—were the Defendant's responses to specific job-related *conduct* by Plaintiff. Temple suspended and transferred Davis after a patient complaint and a meeting about that complaint in which Plaintiff comported herself in a manner her supervisors deemed unprofessional. The record further shows that the Temple employee responsible for termination believed a theft had occurred and had no knowledge of Plaintiff's medical issues.

Absent temporal proximity or antagonism following protected activity, a plaintiff can still establish causation and pretext by looking to the evidence as a whole. A plaintiff might show pretext by showing the defendant's proffered legitimate justification for an action suffers from "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence … and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes v. Perksie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations omitted). Plaintiff argues that Defendant's reasons for suspending Plaintiff and for terminating her were both false, and that this establishes pretext.

As discussed above, it may be true that the cot Defendant claimed Plaintiff stole was not actually Defendant's property. It may also ultimately be the case that Plaintiff was suspended

and transferred despite doing nothing wrong. However, **"[t]o discredit the employer's proffered reason, … the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."** *Fuentes*, 32 F.3d at 765. The factfinder must be able to infer that the employer did not simply make a bad decision when it took an action against an employee, but that the employer took that action for unlawful reasons.

With respect to Defendant's decision to suspend and transfer Plaintiff, even if Plaintiff was not personally responsible for the service that caused a patient complaint, it appears from the record that the complaint reached such high levels of Temple's administration that her supervisors felt some action needed to be taken. An email from Defendant's Chief of Cardiology also suggests that there may have been longer-term concerns about Plaintiff's department. Dr. Edmundowicz wrote, in reference to the patient complaint that led to Plaintiff's suspension:

> I have little hope that things will change soon ([the patient's wife's] own observation is that things have not changed in 3 years) unless someone takes this bull by the horns and deals with it. Also, I will not put the millions of dollars invested in new cardiovascular faculty and their patients transferring to Temple at risk because of impolite, disinterested registration clerks and managers who would rather be on the phone than assisting individuals requesting their help in person.

Def. Ex. JJ. Even Plaintiff herself credits the patient complaint as the cause of her suspension, rather than her requests for FMLA leave. Dep. Davis 115:11–22.

> Q: Why do you believe that Miss Daly was going to discipline you because of this incident?
>
> A: Because Dr. Forfia was considered, as I was told, a "Big Wig" and he's bringing a lot of money to Temple. And we should be bending over backwards to accommodate him and his patients.
>
> Q: Do you believe your discipline was related to your medical condition or FMLA leave that you've taken in the past?
>
> A: No.

*Id.* Plaintiff may simply have been a scapegoat of hospital politics. Alternatively, Temple may have seized upon the patient complaint as an opportunity to address ongoing operational problems. Neither scenario involves unlawful retaliation.

With respect to Defendant's decision to terminate Plaintiff, I have already explained that the record is insufficient to show that the decision was related to Plaintiff's exercise of her FMLA rights. This analysis applies to Plaintiff's retaliation claim as well. Plaintiff has not produced sufficient evidence to allow a factfinder to conclude that Defendant's justification for terminating her—even if based on a mistake about the ownership of the cot—was pretext for unlawful retaliation.

Temple's decision to suspend and transfer Plaintiff after the patient complaint may not have been fair to her. Similarly, its decision to terminate her may have been based on a mistaken conclusion. But I cannot identify any basis upon which a jury could reasonably find that Defendant's proffered reasons for these actions were pretext for unlawful retaliation. For these reasons, Plaintiff's FMLA retaliation claim will be dismissed.

      c. ADA/PHRA Discrimination

Plaintiff's final claims allege that Defendant unlawfully discriminated against her because of her medical conditions. Plaintiff alleges that Defendant's proffered reasons for suspending and terminating her were pretext for discrimination. Because Plaintiff is pursuing a "pretext" theory, Plaintiff must again meet the requirements of the *McDonnell Douglas* burden-shifting framework. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Buskirk*, 307 F.3d at 166 n.1 ("The PHRA and the ADA are basically the same … in relevant respects.") (internal citation omitted).

Defendant argues first that Plaintiff failed to request a reasonable accommodation before either her suspension or her termination. The ADA requires employers to provide employees with reasonable accommodations that will permit the employee to keep her job. 42 U.S.C. § 12112(b)(5). An employer's duty to provide such an accommodation is only triggered when the employee makes a request for an accommodation. *Jones v. United Parcel Service*, 214 F.3d 402, 408 (3d Cir. 2000) (affirming grant of summary judgment because plaintiff "never requested an accommodation or assistance for his disability."). Such a request does not need to use any "magic words," but a request "must make clear that the employee wants assistance for his or her disability." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 313 (3d Cir. 1999).

Plaintiff claims to have made requests for accommodations as follows: "(1) time off from work (when she was confined to a mental institution); (2) intermittent FMLA leave for psychiatric treatment following her return to work; and (3) a request to move to a different department due to stress." Pl. Opp. to Mot. for Summ. J. at 25. Temple does not challenge the first two forms of requests, as in fact they were granted. Nor do I find them particularly relevant, as past requests for leave do not necessarily establish an ongoing need for leave. The relevant issue is Plaintiff's claim that she made two specific requests to move to a different department as an accommodation. First, the record includes a letter dated August 23rd, 2013, from Dr. Bizamcer, Plaintiff's Psychiatrist. Pl. Ex. N. The letter is addressed "To Whom It May Concern" and requests that Ms. Davis be moved to a different department because she "has experienced an acute and severe stress reaction as a result of increased occupational stress." *Id.* Temple argues, and Plaintiff does not dispute, that there is no evidence this letter was actually delivered to any of its staff. Davis offers in the alternative that Temple certainly received her request for a leave of absence August 23rd which, according to its cover letter, was faxed to

16

Defendant on August 29th.  Pl. Opp. to Mot. for Summ. J. at 26; Pl. Ex. Y.   The request states "Mrs. Davis cannot perform her job duties in the current work environment."  Pl. Ex. Y.  Plaintiff contends this fax gave Defendant "notice prior to Plaintiff's termination that she needed a reassignment (since she could not perform her current job)."  Pl. Opp. to Mot. for Sum. Jud. at 26.

The reasonableness of a requested accommodation can present complex, difficult, and fact-specific questions. *Compare Gaul v. Lucent Technologies*, 134 F.3d 576, 581 (3d Cir. 1998) with *Johnson v. McGraw-Hill Companies*, 451 F.Supp.2d 681, 706 (W.D. Pa. 2006).  I need not reach these issues, because as set forth above, Plaintiff's suspension and termination, fairly or unfairly, was based upon issues of performance and conduct unrelated to any issue of disability or accommodation.

For the same reasons that I found Plaintiff has not shown that a factfinder could conclude that the suspension or termination were pretext for FMLA interference or ADA, FMLA, or PHRA retaliation, I conclude that Plaintiff has not produced enough evidence of pretext to defeat summary judgment.

V.     Conclusion

Because Plaintiff has not shown that a factfinder could reasonably conclude she was the victim of discrimination or retaliation in violation of the FMLA, the ADA, or the PHRA.  Plaintiff's Complaint must be dismissed in its entirety.  An appropriate order follows.

      /s/ Gerald Austin McHugh
United States District Court Judge